UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. ACTION NO.  11-00245-02 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ROYCE EDWARD TONEY | MAG. JUDGE KAREN L.  HAYES |

RULING

On July 2, 2012, Defendant Royce Edward Toney ("Toney") filed "Objections to

Magistrate Judge Rulings of June 18, 2012, June 20, 2012, and July 2, 2012,[1] Denying Motions

to Compel Discovery" ("Objections") [Doc. No. 101].  Toney appeals the Orders of Magistrate

Judge Karen L. Hayes [Doc. Nos. 87, 90 & 100] on his two Motions to Compel [Doc. Nos. 69 &

81].   On July 12, 2012, the "Government's Response to Defendant's Objections to Magistrate

Judge Rulings of June 18, 2012, June 20, 2012, and July 2, 2012 Denying Motions to Compel

Discovery" ("Response") [Doc. No.  105] was filed.  For the following reasons, the Objections

are DENIED, and the Magistrate Judge's Orders are AFFIRMED.

I.      Standard of Review

The Magistrate Judge's rulings on Toney's Motions to Compel were made under the

referral authority of 28 U.S.C. § 636 and Fed. R. Civ. P. 72(a).  The Court must apply a "clearly

erroneous" or "contrary to law" standard of review to a magistrate judge's ruling on a non-

dispositive pre-trial motion, such as a motion to compel.  28 U.S.C. § 636(b)(1)(A) ("[A] judge

---

[1] Although Toney refers to a "July 2, 2012" Order, the Magistrate Judge actually signed a "Supplemental Order" [Doc. No. 100] on June 29, 2012.  The June 29, 2012 Supplemental Order was docketed on July 2, 2012.

may designate a magistrate to hear and determine any pretrial matter pending before the court . . .

A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has

been shown that the magistrate's order is clearly erroneous or contrary to law."); *see also Castillo*

*v. Frank,* 70 F.3d 382, 385 (5th Cir. 1995).

**II.     The Magistrate Judge's Orders on Toney's Motions to Compel**

      **A.     Toney's First Motion to Compel**

On May 14, 2012, Toney filed a Motion to Compel [Doc. No. 69] seeking the following

discovery from the Government:

1.   The affidavit in support of the search warrant issued on February 1, 2011, by Magistrate Judge Karen Hayes searching the main offices of the Ouachita Parish Sheriff's Office ("OPSO"). Upon information and belief, this affidavit was prepared by FBI Special Agent Bill Chesser;

2.   Any grand jury testimony of Special Agent Bill Chesser;

3.   Unredacted copies of the statements of Craig Rambin, Hank Smith, Jason Pleasant, Jay Russell, John Asmussen, Marc Mashaw, Marsha Hebert, Mike Ranatza, Monroe Parker, Paul Knight, and Richard Medaries. Redacted copies of the statements of these witnesses were produced as Jenks [sic] materials on March 27, 2012. Complete copies have yet to be provided;

4.   All statements of the following witnesses: Jean De[Lukie][2] (transcript p.22), Brian Newcomer (transcript p. 24), April Martin (transcript p. 24), Christopher Livingston (transcript p. 25), Kerry Clingen (p [sic] 25), Bobby Baker (transcript p. 25), Marky Tucker (transcript p. 25), John Spires (transcript p. 25-26), Stan Felts (transcript p. 26), and Jared Medaries (transcript p. 29); and

5.   The OPSO personnel file of Ms. Kim Leija.

---

[2]Toney asks for the statement of "Jean DeLulie," but the witness is identified as Jean DeLukie in the transcript of the March 27, 2012 hearing, and "Jean DeLukie" is listed on the OPSO website as an administrative receptionist. *See* http://www.opso.net/divisions/administration/ (last visited on July 17, 2012).

[Doc. No. 69, pp. 1-2; Doc. No. 101-1, p. 2].

Toney argued that he was entitled to discovery of items 1-4 under the Jencks Act because Special Agent ("SA") Chesser testified at the March 27, 2012 hearing on Toney's Motion for Amendment of the Conditions of Pretrial Release [Doc. No. 47].   In his Motion to Compel, Toney acknowledged that he had been provided redacted copies of FBI-302 forms containing statements of the witnesses upon whom SA Chesser relied for his March 27, 2012 testimony, but argued that he was also entitled to discovery of items 1-4.  Toney sought discovery of item 5 under *Brady v. Maryland*, 373 U.S. 83 (1963), arguing that Leija's personnel file contained exculpatory material and information bearing on her credibility.

On June 18, 2012, the Magistrate Judge issued a Memorandum Ruling and Order [Doc. No. 87], granting in part and denying in part Toney's first Motion to Compel.  With regard to item 1, the Magistrate Judge granted Toney's Motion to Compel in part and ordered the Government to produce a redacted copy of SA Chesser's affidavit.[3]  With regard to item 2, the Magistrate Judge also granted Toney's Motion to Compel in part and ordered the Government to produce a redacted transcript of SA Chesser's grand jury testimony.  With regard to item 3, the Magistrate Judge reviewed the redacted and unredacted FBI-302 forms, found that the forms were appropriately redacted, and denied Toney's Motion to Compel.  With regard to item 4, in her initial ruling, the Magistrate Judge ordered the Government to produce the FBI-302 forms for

---

[3]SA Chesser's affidavit was redacted except for the portion of the following statement: "your affiant learned the IP address 66.242.244.54, which had accessed LEIJA's account eighty-eight (88) times between May 3, 2010, and October 22, 2010, was assigned to OPSO, . . . ." The Government admitted that this statement was related to SA Chesser's testimony at the March 27, 2012 hearing that April 9, 2010 was the "first known date of a computer intrusion into Ms. Leija's email" and that the intrusions into her email were initiated "[f]rom the Ouachita Parish Sheriff's Office." [Doc. No. 101-2, p. 46]; *see also* [Doc. No. 87, p. 5].

the listed witnesses, so that she could conduct an *in camera* inspection. [Doc. No. 87].  After

completing this inspection, on June 29, 2012, the Magistrate Judge issued a Supplemental Order

[Doc. No. 100], finding that information contained in the FBI-302 forms bore no relation to the

subject matter of the March 27, 2012 hearing and denying Toney's Motion to Compel as to item

4.   Finally with regard to item 5, the Magistrate Judge denied the Motion to Compel, finding that

*Brady/Giglio* do not compel pre-trial disclosure and, at any rate, she found no exculpatory

information or any information which might be used to attack Leija's credibility.

Toney now appeals the Magistrate Judge's Orders with regard to items 1- 4 arguing that

she employed "too narrow of a view of the scope of SA Cheser's testimony, and his entire

affidavit and grand jury testimony should be produced," instead of the redacted versions.   [Doc.

No. 101, p. 5].[4]  Toney also contends that the Magistrate Judge "erred in only requiring

production of the . . . redacted . . . witness statements."  [Doc. No. 101, p. 4].

Federal criminal discovery is primarily governed by Rule 16 of the Federal Rules of

Criminal Procedure.  Rule 16 does not "authorize the discovery or inspection of statements made

by prospective government witnesses except as provided in 18 U.S.C. § 3500," the Jencks Act.

FED. R. CR. P. 16(a)(2).

Title 18, United States Code, Section 3500(a) provides:

> In any criminal prosecution brought by the United States, no statement or
> report in the possession of the United States which was made by a Government
> witness or prospective Government witness (other than the defendant) shall be the
> subject of subpena [sic], discovery, or inspection until said witness has testified
> on direct examination in the trial of the case.

Once a government witness has been tendered for cross "the court shall, on motion of the

---

[4]Toney did not appeal the denial of his Motion to Compel Leija's personnel file (item 5).

defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which **relates to the subject matter as to which the witness has testified**." 18 U.S.C. § 3500(b) (emphasis added). If the entirety of the statement relates to the subject matter of the witness' testimony, it must be produced in full. 18 U.S.C. § 3500(b). If, however, only certain portions of the statement are relevant, only those sections must be produced. 18 U.S.C. § 3500(c).

The Fifth Circuit has said that, under the Jencks Act, "[t]here is no right to statements relating to mere collateral and incidental aspects of a witness' testimony." *Matthews v. United States*, 407 F.2d 1371, 1376 (5th Cir. 1969) (citations omitted). This is because the purpose of the Jencks Act is to allow for effective cross examination of government witnesses by impeachment with inconsistent statements. *See United States v. Beasley*, 576 F.2d 626, 633 (5th Cir. 1978); *United States v. Graves*, 428 F.2d 196, 199 (5th Cir. 1970); and *Palermo v. United States*, 360 U.S. 343, 349 (1959). The Act does not authorize "fishing expeditions." *Graves*, 428 F.2d at 199.

At the March 27, 2012 hearing on the Motion for Amendment of the Conditions of Pretrial Release, SA Chesser briefly testified about his investigation. He then testified about Toney's violation of his bond conditions by contacting OPSO employees. SA Chesser went on to detail the contact between Toney and the executive director of the Louisiana Sheriff's Association two days after Toney's arrest, during which Toney allegedly commented that the director had previously talked him out of firing Chief Deputy Jay Russell, but Toney was still considering that action. SA Chesser further testified as to how each of the 23 people were related to the case without detailing their expected testimony.

SA Chesser also testified about Toney's attempts to learn of the existence and/or scope of the FBI investigation through his contact with OPSO employees. SA Chesser explained that Toney tried to get members of the Metro Narcotics unit to make a case against Amado Leija, Leija's husband, on drug charges. Toney also attempted to get an OPSO employee to illegally obtain Leija's cell phone records.

Next, SA Chesser provided limited testimony about Toney's interactions with Marc Mashaw ("Mashaw"). On December 9, 2010, Mashaw informed Toney that he had spoken with the FBI. SA Chesser also learned during his investigation that Toney had placed a tracking device on Mashaw's vehicle between April 9 and 20, 2010, to see if he was meeting with Leija. According to SA Chesser, April 9, 2010, is also the first known date of an intrusion, initiated from the OPSO, into Leija's email account.

Finally, SA Chesser testified about the "internal affairs interview" of Mashaw on January 25, 2012, based on information provided by Jason Pleasant ("Pleasant") and Richard Medaries ("Medaries"), OPSO employees who were both present at the interview. [Doc. No. 101-2, pp. 46-51]. On the day of the interview, Toney showed Pleasant a list of fourteen topics or questions he intended to cover with Mashaw, and Pleasant offered to investigate by talking with Mashaw, but Toney declined. Toney also showed the list to Medaires, who then left. Toney called Medaires back to meet in Pleasant's office, and he advised Medaires that he was going to do an internal affairs interview. Although Medaires was against holding the interview, Toney proceeded. Before Toney finished going over the fourteen questions, Mashaw refused to continue and left the interview. Toney then said he only intended to slap Mashaw on the wrist. However, in a later statement to SA Chesser, Medaires characterized the fourteen questions or topics as relating

to minor issues and said that Toney had been saying for four to five months that he wanted to fire

Mashaw.  It was Medaires' understanding that Toney had planned to conduct an internal affairs

investigation, so that he could fire Mashaw.

Based on SA Chesser's testimony at the March 27, 2012 hearing, Toney argues that he is

entitled to SA Chesser's unredacted grand jury testimony and search warrant affidavit to obtain

any information Mashaw provided to SA Chesser.  Toney bases his arguments on the fact that he

is charged in Count 21 of the Indictment with retaliation against a witness, now known to be

Mashaw, for providing information regarding other federal and, presumably, uncharged offenses.

According to Toney, this retaliation was in the mind of the Magistrate Judge in denying his

Motion for Amendment of Conditions of Pretrial Release.  Given the Magistrate Judge's focus

and the fact that SA Chesser's testimony at the hearing was related in part to the alleged

retaliatory internal affairs interview of Mashaw, Toney argues that SA Chesser's affidavit and

grand jury testimony relate to Mashaw's allegations and his investigation, even though SA

Chesser did not specifically testify about these allegations.

The Government responds that it did not have to prove Toney's guilt on Count 21 of the

Indictment to demonstrate that Toney's bond conditions were appropriate.  SA Chesser's

testimony about the internal affairs interview of Mashaw was offered by the Government to show

that Toney never conducted an internal affairs investigation of Mashaw prior to the interview, the

allegations against Mashaw were minor, and Toney had apparently decided to fire Mashaw prior

to the interview.  Further, the Government points out that SA Chesser did not testify about the

information that Mashaw had provided to the FBI prior to his internal affairs interview.  Overall,

SA Chesser's testimony demonstrated that Toney conducted an internal affairs investigation of a

known cooperating witness, tried to get the Metro Narcotics unit to make a drug case against a cooperating witness' husband, tried to illegally obtain the same witness' cell phone records, and told the executive director of the Louisiana Sheriff's Association that the director had previously talked him out of firing Chief Deputy Jay Russell, but that he might still fire him.

The Court has reviewed the documents in question and agrees with the Government that Toney is not entitled under the Jencks Act to those portions of SA Chesser's grand jury testimony or search warrant affidavit recounting information provided by Mashaw prior to January 25, 2012. SA Chesser's testimony at the hearing on the Motion to Amend Conditions of Release about Mashaw's interaction with Toney on January 25, 2012, and his confirmation that Mashaw was cooperating with the FBI does not "relate to" statements or evidence provided by Mashaw prior to January 25, 2012, as that term is defined under Fifth Circuit precedent. Accordingly, the Magistrate Judge's ruling on these items is neither contrary to law nor clearly erroneous.

Likewise, Toney is not entitled under the Jencks Act to the unredacted FBI-302s of the witnesses SA Chesser testified about (listed in item 3) or the FBI-302s of individuals (listed in item 4) SA Chesser mentioned at the hearing. The Magistrate Judge reviewed both the redacted and unredacted FBI-302s of the witnesses in item 3 and found the redactions to be appropriate because the redacted information did not relate to SA Chesser's testimony. The Magistrate Judge also reviewed the FBI-302s of the individuals in item 4 who were identified by SA Chesser as persons he interviewed, but whose statements SA Chesser did not rely upon or testify about at the March 27, 2012 hearing. The Magistrate Judge agreed with the Government that these FBI-302s did not have to be turned over under the Jencks Act. This Court has also reviewed the redacted and unredacted FBI-302s of the witnesses in item 3 and the unredacted FBI-302s for the

individuals in item 4 and finds that the Magistrate Judge's ruling was neither contrary to law nor

clearly erroneous.

### B.      Toney's Second Motion to Compel

On June 8, 2012, Toney filed a second Motion to Compel [Doc. No. 81] seeking the

following discovery from the Government:

1.      Any communication or notes of communication between the U. S. Attorney's Office and the Ouachita Parish Sheriff's Office concerning in any manner (a) the conditions of pretrial restraint requested or imposed on Sheriff Toney; (b) the search of Sheriff Toney's vehicle, office, person, or safe; (c) the contents (pre- or post- indictment) of Sheriff Toney's vehicle, office, or safe; and (d) items delivered to the federal government from the OPSO;

2.      Trial counsel's and SA Chesser's personal notes concerning their meeting with employees of Sheriff Toney on February 24, 2012 and any reports concerning this meeting;

3.      Any reports concerning the contact between SA Chesser and Richard Medaries, Jay Russell, Craig Rambin, and William Parker and any reports concerning the acquisition of the items from the OPSO by SA Chesser;

4.      Any communication or notes of communication between the FBI and the Ouachita Parish Sheriff's Office concerning in any manner (a) the conditions of pretrial restraint requested or imposed on Sheriff Toney; (b) the search of Sheriff Toney's vehicle, office, person, or safe; (c) the contents (pre- or post- indictment) of Sheriff Toney's vehicle, office, or safe; and (d) items delivered to the federal government from the OSPO; and

5.      Any communications or notes of communication between the U. S. Attorney's Office, the FBI, and the Federal District Court, or any agency of the District Court concerning (a) conditions of Sheriff Toney's pretrial restraint; (b) purported witnesses listed in the no contact order made part of Sheriff Toney's pretrial restrictions; (c) the seizure of Sheriff Toney's vehicle; and (d) the search of Sheriff Toney's office, vehicle, person, and safe.

[Doc. No. 81, pp. 1-2; Doc. No. 101, p. 6].  Toney argued that production was required pursuant to *Brady* and the Jencks Act.

With regard to items 1, 2, 4 and 5, the Government responded that the items do not exist. The Magistrate Judge accepted the Government's representation and denied the Motion to Compel as to these items.  With regard to item 3, the Government argued that its production is not mandated by *Brady* or Jencks.  The Magistrate Judge agreed and also denied the Motion to Compel as to this item.

Toney appeals the Magistrate Judge's ruling, specifically with regard to item 5 because the Magistrate Judge stated in her Order [Doc. No. 90, pp. 4-5] that "the government requested and the Court imposed the following relevant conditions of release. . . ."  Toney states that the Government's alleged request is not found in the transcript of the initial appearance and, thus, he is entitled to discovery of when the Government "made this request, the manner of the request, or what specific conditions were requested by the [G]overnment." [Doc. No. 101, p. 7].  He claims this "information is critical because it may support the defense's argument in its motion to suppress that the timing of the indictment of Sheriff Toney and his arrest were tools used by the [G]overnment to conduct a warrantless search of his office, vehicle, desk, and locked safe." *Id.*

The Government responds that it has already stated in its opposition to the second Motion to Compel that it advised United States Probation Officer ("USPO") Jay Garner of the conditions that it would be requesting at Toney's initial appearance. [Doc. No. 85, p. 10].  The Government assumes that USPO Garner passed this information along to the Magistrate Judge because the conditions were imposed by the Magistrate Judge at the hearing without specific request by the Government. [Doc. No. 101-3, p. 7].  The requested conditions included that Toney would have

no contact with any OPSO employee nor with any potential witness.  The Government tendered a list of potential witnesses which was filed in the record under seal, and a copy of the list was sent to Toney's then-counsel, Marty Stroud. [Doc. No. 101-3, p. 8].

Toney has not appealed the Magistrate Judge's denial of his second Motion to Compel as to items 1, 2, 3, and 4.[5]  To the extent that Toney appeals the Magistrate Judge's denial of his second Motion to Compel as to item 5, the Government has provided its only communication with the USPO, and the Court has no evidence or information to suggest that there is any other communication for the Government to disclose.  Therefore, the Magistrate Judge's ruling on the second Motion to Compel is neither contrary to law nor clearly erroneous.

## III.    CONCLUSION

For the foregoing reasons, Toney's Objections [Doc. No. 101] are DENIED, and the Orders of the Magistrate Judge [Doc. Nos. 87, 90 & 100] are AFFIRMED.

MONROE, LOUISIANA, this 19th day of July, 2012.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[5] Even if he had appealed the Orders on items 1, 2, and 4, Toney has offered no evidence or information to contradict the representation of AUSA Griffing, as an officer of the Court, that the items do not exist.